**EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, Plaintiff,**

v.

**BRONSON METHODIST HOSPITAL, Defendant.**

**No. K 79–484 CA4.**

United States District Court,
W. D. Michigan, S. D.

Nov. 7, 1979.

Leroy D. Clark, William L. Robinson, E.E.O.C., Washington, D. C., Joseph H. Mitchell, Charlie C. Taylor, Rita Chastang, E.E.O.C., Detroit, Mich., for plaintiff.

Gordon J. Quist, Craig A. Miller, Miller, Johnson, Snell & Cummiskey, Grand Rapids, Mich., for defendant.

## OPINION AND ORDER

BENJAMIN F. GIBSON, District Judge.

*Statement of Facts*

Plaintiff, Equal Employment Opportunity Commission, [hereinafter "EEOC"] seeks a preliminary injunction against the defendant, Bronson Methodist Hospital [hereinafter "Bronson"], requesting this Court to reinstate one Ernesta Lynn Worthams to her former position as a nurse at Bronson. EEOC contends that Worthams was discharged from her position as a nurse in retaliation for filing employment discrimination charges against Bronson under Title VII of the Civil Rights Act of 1964.

It is alleged by EEOC that Worthams filed a charge of racial discrimination against Bronson on February 8, 1979. This charge arose out of a dispute with Bronson involving a position as Unit Supervisor in Labor and Delivery. Worthams alleges that she did not secure this position, which was a promotion, because of her race.

It is contended by EEOC that Worthams, since the filing of the discrimination charge, has suffered the following retaliatory conduct by Bronson:

(1) She was suspended on April 27, 1979, for three (3) days for failing to report to a new hospital unit even though she had not been given notice that she had been transferred to that unit;

(2) She was transferred from the OB. Unit of the hospital on April 26, 1979, where she was highly qualified by at least five (5) years of training and experience, to the Trauma and Emergency Unit, for which she had no previous experience;

(3) She was ultimately discharged from employment on October 1, 1979.

Bronson has filed an Answer denying allegations of retaliatory conduct and claims that Worthams was disciplined and ultimately discharged for legitimate non-discriminatory reasons.

It appears that EEOC, acting in behalf of Worthams, initially filed a Petition for Preliminary Relief on August 17, 1979, alleging harassment and retaliation. This petition was filed prior to the ultimate discharge of Worthams. After the discharge on October 1, 1979, a subsequent petition was filed by EEOC requesting injunctive relief against alleged retaliation and reinstatement of Worthams. EEOC requested a Temporary Restraining Order and this Court set the matter for a hearing regarding the request for preliminary injunctive relief. The hearing conducted was confined to the relief requested in the petition filed by EEOC on October 12, 1979, namely, whether Bronson had engaged in retaliatory conduct that would support an order enjoining Bronson from such alleged conduct and reinstatement of Worthams. The relief requested in the petition filed August 17, 1979 is not the subject matter of this Opinion and will be considered at a later date if deemed to be necessary.

In support of its request for a preliminary injunction, EEOC introduced evidence that tended to show that Worthams was terminated by Bronson October 1, 1979, for an incident that allegedly occurred on September 29, 1979. It was alleged that Worthams engaged in conduct that constituted "gross indiscretion and lack of sound professional judgment." Reference was made to Worthams having in her possession a gun and allegedly threatening and intimidating one Wilbur Johnson, a patient. Worthams acknowledged that she did have in her possession a gun that belonged to a police officer who was a patient but said that the reason for the possession of the gun was to lock it up for safekeeping. She acknowledged that at some point in time she did come in contact with Johnson and she did advise him that she had a gun for her protection but she was joking and it was understood by Johnson that she was joking.

Bronson claims that Johnson had made a "pass" at Worthams and had touched her in a "suggestive" manner. Further, that Worthams became angry and took possession of the gun, which was in the custody of one Jim Matteson, a technician, and then confronted Johnson and the following colloquy took place:

Mr. Johnson asked, "What's that?"

Mrs. Worthams said, "That's a gun."

Mr. Johnson said, "You're kidding."

Mrs. Worthams said, "You had better believe that's a gun. Nobody tells me to shut up. The last person who told me to shut up got shut up."

Bronson further claims that after this so-called "gun incident" Worthams explained to her supervisor in commenting upon this matter that she had told Johnson that the gun "was to protect herself from people like him." Bronson further alleges that Worthams indicated to her supervisor that she did not like to be threatened by anyone and if a patient were to threaten her she would take steps to protect herself and gave an example of securing a scalpel and letting the patient, in effect, know that the scalpel was for her protection.

There is some dispute from the testimony from the witnesses for the two sides as to the manner in which the gun became in the possession of Worthams and the purpose for which she secured possession of the gun. Bronson concludes that the "pass" made by Johnson angered her and she secured the gun in order to "protect herself." In support of this conclusion Bronson has offered testimony of statements either overheard

by employees of Bronson or allegedly admitted by Worthams.

Worthams has not denied that such statements were made, but denies that there was any aggressive intent. In support of this an affidavit of Johnson was accepted by the Court and affidavits of two witnesses of Bronson were likewise accepted by the Court. The affidavit of Johnson indicates that he took the "gun incident" as a joke and was not intimidated. The affidavit by the two witnesses for Bronson, one of which is that of the police officer, says that Worthams made what could be construed to be threatening or hostile remarks toward Johnson.

### Discussion of Facts and Law

As we have seen, Worthams claims that her discharge as a nurse from Bronson was in retaliation for charges of discriminatory employment practices filed with EEOC. Prior to a discussion and determination as to whether or not the EEOC is entitled to preliminary injunctive relief, it is helpful to discuss what EEOC (and Worthams) must show to make out a claim of retaliation.

EEOC alleges that Bronson violated Paragraph 704(a) of the Civil Rights Act of 1964, [hereinafter "Title VII,"], 42 U.S.C. § 2000e–3(a) (1976), which provides in pertinent part:

> It shall be an unlawful employment practice for an employer to discriminate against any of his employees . . . because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter.

In order to prove a claim under this section, plaintiff carries the burden of persuasion by a preponderance of the evidence to show that "(1) she [Worthams] engaged in a protected activity as an employee, (2) she was subsequently discharged from employment, and (3) there is a causal connection between the protected activity and the discharge." *Hochstadt v. Worcester Foundation for Experimental Biology, Inc.*, 425

F.Supp. 318, 324 (D.Mass.), *aff'd* 545 F.2d 222 (1st Cir. 1976) [hereinafter "*Hochstadt*"] Accord, *EEOC v. Locals 14 and 15, International Union of Operating Engineers*, 438 F.Supp. 876, 881 (S.D.N.Y.1977) [hereinafter "*EEOC v. Locals 14 and 15*"]. The burden of going forward, however, shifts between the plaintiff and defendant in accord with the realities of the employer-employee relationship and the intent of the Congress to remove, "artificial, arbitrary, and unnecessary barriers to employment where the barriers operate invidiously to discriminate on the basis of racial or other impermissible classification." *Griggs v. Duke Power Co.*, 401 U.S. 424, 431, 91 S.Ct. 849, 853, 28 L.Ed.2d 158 (1971).

In a case of alleged retaliation, the allocation of the burden of going forward parallels the allocation in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). The elements of plaintiff's prima facie case have been articulated in two subtlely different formulations, the major difference having to do with the causal link. The *Hochstadt* formula is as follows:

> The employee must make out a prima facie case by showing (1) that she engaged in protected activity, i. e., she opposed unlawful employment practices, or participated in Title VII proceedings, (2) that her employer was aware of the protected activities, (3) that she was subsequently discharged, and (absent other evidence tending to establish a retaliatory motivation) (4) that her discharge followed her protected activities within such period of time that the court can *infer* retaliatory motivation.

*Hochstadt*, 425 F.Supp. at 324 (emphasis added). The court in *EEOC v. Locals 14 and 15*, however, stated the elements of plaintiff's prima facie case as follows:

> (1) protected participation or opposition under Title VII known by the retaliator;
> (2) an employment action or actions disadvantaging a person or persons engaging in protected activities; and
> (3) a causal connection between the first two elements, that is, a retaliatory motive

playing a part in the adverse employment actions. *EEOC v. Locals 14 and 15*, 438 F.Supp. at 881. The difference may be more apparent than real given the fact that the *EEOC v. Locals 14 and 15* opinion cites *Hochstadt*, and a retaliatory motive was found.

■ Once a prima facie case has been established, the burden shifts to the employer to articulate a legitimate, non-discriminatory reason for the discharge. *Hochstadt*, 425 F.Supp. at 324. If the employer satisfies this burden, the plaintiff will then have the opportunity to demonstrate by evidence that the reasons articulated by the employer were pretexts. *Id.*

The *Hochstadt* opinion contains the following thoughtful discussion of the role of discriminatory motivation in cases of this sort:

> In *Tidwell v. American Oil Co.*, 332 F.Supp. 424 (D.Utah 1971), the court said plaintiffs should prevail in a retaliation case if opposition to employment practices was the "principal reason" for the discharge. *Id.* at 430. However, in *McDonnell Douglas Corp. v. Green, supra*, the Court emphasized that "Title VII tolerates no racial discrimination, subtle or otherwise." *Id.*, 411 U.S. at 801, 93 S.Ct. at 1824. Similarly, Title VII tolerates no discrimination for participation in protected activities. Thus, if it is shown that retaliatory discrimination on the part of the employer contributed among other reasons to cause the discharge, there is a violation of statute. See *Bradington v. International Business Machines Corp.*, [360 F.Supp. 845 (D.Md.1973)].

■ Of course, the fact that an employee files a complaint with EEOC creates no right to miss work, fail to perform assigned work, leave work without notice, or to do or fail to do any number of other things that would be legitimate reasons for dismissing any employee. *Brown v. Ralston Purina Company*, 557 F.2d 570, 572 (6th Cir. 1977). *Accord, Hochstadt*, 545 F.2d 222, 230–31 (1st Cir. 1976).

> "[M]anagement perogatives . . . are to be left undisturbed to the greatest extent possible. Internal affairs of employers . . . must not be interfered with except to the limited extent that correction is required in discrimination practices."

*Hochstadt*, 545 F.2d at 230, *quoting* additional views on H.R. 7152, U.S.Code Cong. & Admin.News, pp. 2355, 2516 (88th Cong., 2d Sess., 1964).

Where an employee is disciplined for actions somehow related to the opposition of allegedly discriminatory practices—vociferousness, expressions of hostility to an employer or superior and the like—"courts have in each case to balance the purpose of the Act to protect persons engaging reasonably in activities opposing . . . discrimination, against Congress's equally manifest desire not to tie the hands of employers in the objective selection and control of personnel.[6]" *Hochstadt*, 545 F.2d at 231. This passage was footnoted as follows:

> [6] Plaintiff and the EEOC in its *amicus* brief seemingly reject a balancing test and argue instead that section 704(a) immunizes any employee conduct which is arguably relevant to an employee's opposition to employer discrimination. The negative impact of such conduct on the employer, plaintiff observes, is a necessary and unavoidable consequence of the statutory scheme. We doubt that Congress meant to go this far, particularly because an employee who feels that his employer has violated his rights under Title VII may pursue specific state and federal legal remedies for discrimination and need not rely on vigorous internal action directed against the employer. This conclusion is reinforced by comparing the Title VII procedures with those under the National Labor Relations Act (NLRA). The NLRA allows an employee to engage in "concerted activity" to organize his co-workers, 29 U.S.C. § 157, and courts have recognized approvingly that unionization often depends on constant self-help activity since employees have no specific legal remedies to achieve their objective. Despite this broad reading of "concerted activity," however, courts employ a balancing test in the labor cases to determine whether employee organizing activity has gone too far. See discussion, *infra*. Thus, we find it entirely appropriate to utilize a similar balancing test to determine whether an employee's opposition to employer discrimination in the Title VII context has gone too far.

Both the District Court and the First Circuit found that plaintiff Hochstadt had indeed "gone too far":

Dr. Hochstadt's actions over the previous three and one-half years demonstrated that her colleagues and other necessary personnel could not work successfully with her: research assistants in her laboratory were unhappy and left the Foundation; senior scientists in the cell biology group complained that her behavior impeded their research, and several sought her resignation; and the director and assistant director had found it impossible to reach any compromise with Dr. Hochstadt. Dr. Hoagland had shown patience in dealing with Dr. Hochstadt in the past, warning plaintiff repeatedly that her actions might cause her discharge and declining to recommend her dismissal in 1974 despite inquiries by the Foundation's trustees, but an employer is entitled to lose patience at some point. [citation omitted] Based on this pattern of conflict, the district court could reasonably conclude that the Foundation's decision to discharge plaintiff was based on legitimate and non-discriminatory reasons and did not infringe on her rights under Title VII.

*Hochstadt,* 545 F.2d at 234.

So much for the discussion with respect to what is necessary to prove or make out a claim of retaliatory action and the burden of proof as it relates thereto. Now we must turn to the specific question before the Court, namely, whether or not a preliminary injunction should be issued in this cause based upon the facts adduced at the hearing. EEOC seeks injunctive relief pursuant to § 706(f)(2) and (3) of Title VII of the Civil Rights Act of 1964 as amended, 42 U.S.C. § 2000e *et seq.* Section 706(f)(2) provides as follows:

> Whenever a charge is filed with the Commission and the Commission concludes on the basis of a preliminary investigation that prompt judicial action is necessary to carry out the purpose of this Act, the Commission, or the Attorney General in a case involving a government, governmental agency, or political subdivision, may bring an action for appropriate temporary or preliminary relief pending final disposition of such charge. Any tempo-

rary restraining order or other order granting preliminary or temporary relief shall be issued in accordance with Rule 65 of the Federal Rules of Civil Procedure. It shall be the duty of a court having jurisdiction over proceedings under this section to assign cases for hearing at the earliest practicable date and to cause such cases to be in every way expedited.

Thus, the criteria for granting the injunctive relief is a showing that "prompt judicial action is necessary to carry out the purpose of this act." Further, that a preliminary injunction is appropriate pending final disposition of the matter before EEOC and that relief shall be issued in accordance with Rule 65 of Federal Rules of Civil Procedure.

In one of its most recent discussions on the issue of preliminary injunctions, the Sixth Circuit has set out the following requirements which must be considered before preliminary relief may issue:

> 1) Whether the plaintiffs have shown a strong or substantial likelihood or probability of success on the merits;
>
> 2) Whether the plaintiffs have shown irreparable injury;
>
> 3) Whether the issuance of a preliminary injunction would cause substantial harm to others;
>
> 4) Whether the public interest would be served by issuing a preliminary injunction.

*Mason County Medical Association v. Knebel,* 563 F.2d 256, 261 (6th Cir. 1977). The standards for determining the probability of success on the merits of the retaliation claim here involved are discussed above.

The issue of whether the irreparable harm relates to Worthams or EEOC is not here in dispute. The Court understands that EEOC is not contending, nor indeed has any evidence been submitted, that Worthams has suffered irreparable harm within the meaning of the above-stated standards. Moreover, if the EEOC were to engage in such argument, it would have to be confronted with the decision of *Sampson v. Murray,* 415 U.S. 61, 94 S.Ct. 938, 39

L.Ed.2d 166 (1974). That case held that a mere loss of income or damaged reputation would fall short of the type of irreparable injury that is necessary for issuance of a temporary injunction as requested in this particular case. Further, *Sampson* holds that mere injury, however substantial in terms of money, time and energy necessarily expended in the absence of an injunction, is not enough. The Court said that the possibility that adequate compensation or other corrective relief will be available at a later date, in the ordinary course of litigation, weighs heavily against the claim of irreparable harm.

EEOC requests a preliminary injunction and predicates its claim not on any irreparable harm to Worthams. Rather, EEOC says that it will suffer irreparable harm. EEOC claims an injunction is needed to protect its own processes and to protect any further retaliation that might impede its investigation of the charges against Bronson. Indeed, as stated by the affidavit of the District Director of EEOC, a preliminary injunction is necessary because it is her belief that:

> The Defendant's unlawful conduct has had and will continue to have the effect of precluding or discouraging the Defendant's employees from asserting their rights under Title VII. Unless preliminary relief is granted, it will be reasonably anticipated that the Defendant's unlawful conduct will continue, thereby depriving Ernesta Lynn Worthams and Defendant's employees of their rights under Title VII and impeding the Commission's administrative processes.

EEOC's "Memorandum in Support of Motion for a Temporary Restraining Order,"(filed October 12th) argues the position that a retaliatory dismissal of an employee during the pendency of a Title VII action is "an affront to the Court's process because it interferes with and could ultimately destroy the function of courts to provide litigants an opportunity to seek redress of their grievances." Plaintiff quotes the following language from *EEOC v. Locals 14 and 15,* 438 F.Supp. 876, 879–80 (S.D.N.Y.1976):

> The insult that such retaliation against litigants or witnesses would produce goes beyond the injuries suffered by the individuals themselves: the integrity of the court's process and proceedings suffers the inevitable and intolerable destruction that accompanies any retaliation against witnesses . . .

> Witnesses who lose work opportunities, suffer harassment, and are otherwise retaliated against because of their testimony, are going to be much less likely to testify in a subsequent proceeding (which is very probable in this case) if such retaliation goes unchecked. This would affect both the Court—hindering its ability to hear the full story—and the EEOC—hindering it in prosecuting this case.

In regard to interference with the Court in the case at bar, it is important to note that the *EEOC v. Locals 14 and 15* case was in a very different procedural context, making the affront to court processes more direct. In that case the merits of the underlying discrimination claim had been decided in favor of the EEOC and an appeal was pending in the Second Circuit. At the time the injunction was requested "the District Court was stayed in the enforcement of the decree and all other proceedings pending determination of the appeal," *id.* at 879, and the court was relying on this affront to its processes as the rationale, at least in part, for jurisdictional purposes. On the other hand, at the time of Worthams' discharge, there already was pending before this Court another preliminary injunction motion concerning retaliatory transfer and harassment.

The quoted language also mentions interference with EEOC's ability to prosecute their case as another resultant injury caused by retaliation through the potential "chilling" of witnesses' willingness to testify or otherwise cooperate. The argument finds considerable support in *Federoff v. Walden,* 17 FEP Cases 91 (S.D.Ohio, March 24, 1978), *appeal dismissed* June 23, 1978, 6th Cir. docket numbers 78–3309 and 78–3310 (according to the docket sheet at the Southern District of Ohio). The *Federoff*

case involves a very similar situation to the case at bar—a pending complaint with EEOC, a dismissal alleged to be retaliatory, and an application for a preliminary injunction reinstating the dismissed employee—and the court there granted the injunction to one of the plaintiffs. The differences to keep in mind, however, are that *Federoff* involved individual plaintiffs rather than the EEOC, and that the employee terminated was merely a supporter of the employee filing with EEOC as opposed to the actual employee charging discrimination (the latter employee was transferred prior to the time his employer had knowledge of his EEOC complaint and was denied an injunction because he failed to demonstrate a substantial likelihood of success on the merits).

The court first concluded that plaintiffs in this context were not required to exhaust their administrative remedies through EEOC in order to seek the injunction, *Federoff v. Walden*, 17 FEP Cases at 95. In so holding, the court said:

> The discretionary powers granted to the EEOC to apply its administrative expertise and work out a noncoercive resolution of the problem are clearly shortcircuited if the retaliating employer is interfering with the agency's ability to obtain evidence. There is little expenditure of judicial time, because the court is not addressing the underlying dispute, but simply the problem of retaliation. And the premise that an agency should be permitted to develop its own factual record is actually supported if by enjoining any further retaliation the court encourages employees to make their personal knowledge available to the agency.

Turning to the issue of irreparable harm, the court said:

> As with most retaliatory activity, the harm threatened here is irreparable. Independently of the threat to Clymer's employment future, there is irreparable damage done to the administrative process if other employees feel that their positions are in jeopardy if they cooperate with agency investigators. Such inhibi-

tions might particularly be expected in the present circumstances because funding difficulties have made future layoffs an almost virtual certainty. If funding problems are perceived as a shield behind which effective retaliation may be hidden, then either agency will be irreparably stymied in its efforts both to determine the extent of the discriminatory activity and to reach an accommodation with the employer.

*Federoff v. Walden*, 17 FEP Cases at 86–97.

Of course, in the case at bar there do not appear to be any funding difficulties requiring a reduction of staff size, but the vitality of the rationale remains should the facts support (which they do not) the inference that other employees might feel inhibitions about cooperating with the EEOC investigation. The importance of evidentiary support for this "chilling effect" type of argument is made clear by comparing *Federoff* with *EEOC v. Lockheed Electronics Company, Inc.*, 461 F.Supp. 242 (S.D.Texas 1978), where a preliminary injunction was denied in a retaliatory discharge case. After finding that any harm to the discharged employee was adequately remediable at law through reinstatement and back pay under § 2000e–5(g), the court addressed the issue of harm to the commission as follows:

> The argument has been made that retaliatory actions on the part of an employer causes irreparable harm to the Commission. If employees fail to file complaints with the Commission fearing their employers will take retaliatory action, the integrity of the Commissions [sic] administrative process is jeopardized.

> Without considering the appropriateness of the Commission's utilizing this section to strengthen its effectiveness, it is certain that the facts in this case will not support the request for injunctive relief. There has been no evidence that there are employees of Lockheed who did not file charges for fear of retaliation or who did file charges and were fired in retaliation.

*EEOC v. Lockheed Electronics Company, Inc.*, 461 F.Supp. at 244–45.

Now applying these basic principles of law as stated above to the facts of this case, EEOC cannot secure an injunction unless it can show that there is a strong or substantial likelihood or probability of success on the merits. In other words, EEOC must show that it has a strong case and that it probably will prevail when a full hearing is held on the merits. However, as we have indicated previously, the facts are in dispute as to the circumstances surrounding, or giving rise to, the discharge of Worthams. This Court finds that the preponderance of the evidence weighs in favor of the position taken by Bronson. This Court cannot ignore the uncontroverted testimony of the witnesses produced by Bronson indicating the statements made by Worthams at the time she had the gun in her possession. This Court finds that reasonable persons could conclude that from the evidence Worthams had the intent of "protecting herself" from Johnson. The Court further finds that based upon the record in its entirety, it cannot say that Bronson would not prevail after a trial on the merits of this matter. This Court further finds that the evidence is not stronger in favor of EEOC's position as compared with Bronson. On the contrary, the Court is the opinion that based upon the evidence, Bronson makes out a stronger case.

EEOC urges that when a governmental agency is involved it need not show a strong or substantial likelihood or probability of success on the merits but merely make a showing sufficient to "raise serious questions going to the merits" and need not establish a likelihood of ultimate success. In support of this proposition, EEOC cites the case of *Semmens Motor, Inc. v. Ford Motor Co.*, 429 F.2d 1197, 1205–6 (2nd Cir. 1970) which made the following statement:

In light of the imbalance of hardship, affirmance of the temporary injunction does not depend on a holding that [plaintiff] had demonstrated a likelihood of success; it is necessary only that [plaintiff] has raised questions going to the merits so serious, substantial, difficult and doubtful, as to make them a fair grounds for litigation and thus for more

deliberate investigation, *Hamilton Watch Co. v. Benrus Watch Co., supra*, 206 F.2d at 740.

Assuming arguendo that this lesser standard is appropriate in this particular case, and this Court does not determine that it is, EEOC still cannot prevail on the facts as found by this Court. The Court finds and determines that the facts do not raise questions "as to make them a fair grounds for litigation." As stated above, the facts tilt in favor of Bronson and not EEOC and Worthams. If the Court were to decide the case on the merits, based on the evidence before the Court at this time, the Court would have to conclude that Worthams was not discharged in retaliation for pursuing her Title VII claims.

Since this Court has concluded that EEOC has not convinced it either that there is a strong likelihood of success on the merits or that there are serious questions raised, this would ordinarily conclude any further consideration of whether or not a preliminary injunction should issue. However, with respect to the question of irreparable injury, and assuming arguendo that EEOC has demonstrated either criteria set forth above, this Court finds that a showing has not been made of irreparable injury. The irreparable injury that we are concerned with is the irreparable injury to EEOC.

The only testimony which bears upon this, the question of whether or not the EEOC processes have been impeded or whether there is a "chilling effect" upon the exercise of the Title VII rights of the Bronson employees or Worthams, is the testimony of one Richard Reda. This Court does not find that testimony convincing. He, in effect, says that the EEOC is delayed by having to consolidate the retaliation charge with the original charge filed by Worthams. He does not indicate that such consolidation places a heavy or unusual burden upon the processes of the Commission.

There is no convincing evidence that indicates that witnesses or other employees of Bronson are reluctant to pursue any Title

VII claims because of the alleged retaliatory acts of Bronson. EEOC does not allege or offer proof to show that any potential witnesses have been reluctant to testify in this case or, indeed, that its investigation has in any way been seriously delayed and that it is unable to carry out its statutory mandate. With respect to whether or not the alleged retaliation has had a "chilling effect" on Worthams, it is of some interest that Worthams has seen fit to file several charges with the EEOC and take an active part in pursuing her Title VII claims. Therefore, one cannot say from the evidence that Worthams has felt any inhibition to pursue her rights under Title VII.

EEOC urges that where federal agencies seek injunctions the usual prerequisites for irreparable injury need not be established. In support of this proposition *United States v. Hayes International Corporation*, 415 F.2d 1038 (5th Cir. 1969) is cited as follows:

> Where, as here, the statutory rights of employees are involved and an injunction is authorized by statute and the statutory conditions are satisfied as in the facts presented here, the usual prerequisites of irreparable injury need not be established and the agency to whom the enforcement of the right has been entrusted is not required to show irreparable injury before obtaining an injunction. (citations omitted)

This language presupposes that the statutory rights of employees have been violated. However, as indicated above, this Court concludes that the statutory rights of Worthams, as it related to the retaliation charge based on the evidence before the Court, has not been violated based upon the evidence produced so far. As a consequence, based upon this specific finding of fact, EEOC is not entitled to an injunction either under the standard as annunciated in *Mason County Medical Association v. Knebel, supra*, nor the standards set forth in the *Hayes International Corporation* case, even if such standard is deemed appropriate which the Court need not decide at this time.

## Conclusion

Based upon the facts as found by the Court as set forth herein, and the law stated as it applies hereto, this Court cannot say that the discharge of Worthams was not based on legitimate and nondiscriminatory reasons. Further, the Court concludes that for purposes of the preliminary injunctive relief requested that there is no strong or substantial likelihood or probability of success on the merits on the part of EEOC. Indeed, the Court further concludes that the Plaintiff has failed to satisfy the lesser standard urged by EEOC in the *Semmens Motor* case. The facts do not raise "questions going to the merits so serious, substantial, difficult and doubtful as to make them a fair grounds for litigation" and thus for a more deliberate investigation.

The Court finds that the preponderance of the evidence as presented in this hearing does not support the contention of EEOC that Worthams was discharged for retaliatory reasons. The Court further concludes that the EEOC has not sustained its burden of proof that irreparable harm will result to it if preliminary injunctive relief is not granted.

Therefore, for the reasons stated above, the request for a preliminary injunction is hereby denied.

IT IS SO ORDERED.