427 F.2d 1091
 EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, Petitioner-Appellee,
v.
UNITED ASSOCIATION OF JOURNEYMEN AND APPRENTICES OF the PLUMBING AND PIPEFITTING INDUSTRY OF the UNITED STATES AND CANADA, LOCAL UNION NO. 189, and Mechanical Contractors Association of Central Ohio, Inc., Respondents-Appellants.
 No. 20514.
 United States Court of Appeals, Sixth Circuit.
 May 27, 1970.
 
 Topper & Alloway, R. Brooke Alloway, N. Victor Goodman, John J. Duffey, Columbus, Ohio, for respondents-appellants on Motion for Stay.
 Stanley P. Hebert, Gen. Counsel, Russell Specter, Deputy Gen. Counsel, Marian Halley, Charles L. Reischel, Attys., Equal Employment Opportunity Commission, Washington, D. C., on brief for petitioner-appellee in Opposition to Motion to Stay.
 ORDER ON MOTION FOR A STAY
 WEICK, Circuit Judge.
 
 
 1
 United Association of Journeymen and Apprentices of the Plumbing and Pipefitting Industry of the United States and Canada, Local Union No. 189, a labor union, has filed a motion to stay an order of the District Court. The motion was heard in chambers and was submitted to the Court on oral arguments and briefs.
 
 
 2
 The controversy initially arose in a private action filed in the District Court by Gwylard Locke against respondents under Section 706(e) of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-5. In that action Locke, a Negro, alleged that the union's job referral system was discriminatory. The action was docketed as Civil Action No. 68-148.
 
 
 3
 A settlement agreement was entered into by the parties on May 29, 1968, pursuant to which the Court granted an injunction against the union, rendered a judgment in favor of Locke against the union in the amount of $10,000 — damages, and ordered the parties to renegotiate and submit to the Court Articles XV and XVI of the Collective Bargaining Agreement between the union and Mechanical Contractors Association of Central Ohio, Inc., which articles related to Hiring Hall, Referral Procedures, and Seniority and Lay-Offs. The union paid the money judgment.
 
 
 4
 The union and the Contractors Association did renegotiate said Articles XV and XVI, as ordered by the Court, and agreed upon a revision which was submitted to and approved by the Court on September 30, 1968. In the revision, seniority rights with respect to hiring and layoffs were preserved. Group I consisted of about 800 journeymen with five or more years' experience in plumbing work. Groups II and III contained over 300 additional men, about 30 of whom were Negroes in Group III. Members in Group I receive preference in hiring and layoff, over the men in Groups II and III.
 
 
 5
 In its Memorandum of Approval, entered on September 28, 1968, the District Court approved the renegotiated Articles XV and XVI of the Collective Bargaining Agreement (a copy of which was attached to the Memorandum), "as appearing to be in compliance with Title VII of the Civil Rights Act of 1964."
 
 
 6
 In May, 1969, the Equal Employment Opportunity Commission (EEOC) filed in the District Court a "Petition to Show Cause" against the respondents, which was docketed as Civil Action 69-160, 311 F.Supp. 468. The petition alleged that the Hiring Hall System, which had theretofore been approved by the District Court in the private action of Locke, perpetuated the alleged discrimination which existed prior to 1968, and hence was unlawful. EEOC claimed the right to file the petition under Section 706(i) of the Civil Rights Act.
 
 
 7
 EEOC filed a motion for summary judgment, which was granted by the Court. An order was entered which in effect abolished the seniority system and placed all Negroes in Class I.
 
 
 8
 The union appealed, and moved to stay the order of the District Court pending appeal. In support of its motion to stay, the union contends: (1) That EEOC was without authority to initiate the suit which it filed; and (2) That the Court erred in granting summary judgment.
 
 
 9
 In considering this motion, it is necessary only to determine whether the union is likely to prevail in its appeal, and whether it will sustain irreparable injury if stay is not granted.
 
 
 10
 Relative to the first ground, the Act specifically grants authority to the Attorney General to institute civil actions in the appropriate District Court "to insure the full enjoyment of the rights herein described." 42 U.S.C. § 2000e-6. The Attorney General has not taken any action under this statute.
 
 
 11
 The provision of the Act under which EEOC filed the "Motion to Show Cause" is as follows:
 
 
 12
 "(i) In any case in which an employer, employment agency, or labor organization fails to comply with an order of a court issued in a civil action brought under subsection (e) of this section, the Commission may commence proceedings to compel compliance with such order." (42 U.S.C. § 2000e-5(i))
 
 
 13
 The order under subsection (e) was entered by the District Court in the Locke case. The union contends that it has fully complied with that order, and that the purpose of the motion to show cause was not to compel compliance with that order but to obtain a new and different order from the District Court. In my opinion, this contention presents a substantial question which the union ought to have a right of review on appeal prior to the destruction of its seniority system.
 
 
 14
 No case has been cited holding that EEOC has the power to institute such a proceeding. It is contended that if Congress desired to vest in EEOC authority to institute civil action, such as it granted to the Attorney General, it could have employed the same language to accomplish this purpose as it used in Section 2000e-6.
 
 
 15
 The use of the summary judgment in this case is another substantial question. It is asserted that the union filed affidavits which the Court suppressed, and that it did not consider affidavits denying discrimination.
 
 
 16
 No direct evidence of discrimination has been pointed out. The Court inferred discrimination from statistical information as to conditions which existed prior to the order in the Locke case. The Court held that the present seniority and layoff provisions "have the effect of perpetuating past discrimination practices."
 
 
 17
 We have disapproved the use of summary judgment where, although the basic facts were not in dispute, the parties nevertheless in good faith disagreed concerning the inferences to be drawn therefrom. S. J. Groves & Sons Co. v. Ohio Turnpike Comm'n, 315 F.2d 235, 237-238 (6th Cir.1963), cert. denied, 375 U.S. 824, 84 S.Ct. 65, 11 L.Ed.2d 57. See Hart v. Johnson, 389 F.2d 239 (6th Cir.1968); Bohn Aluminum & Brass Corp. v. Storm King Corp., 303 F.2d 425 (6th Cir.1962).
 
 
 18
 In addition to the dispute over the inferences to be drawn, we have also a presumption in favor of the validity of the final judgment entered by the Court in the Locke case. We ought not to infer that the Court entered an illegal judgment.
 
 
 19
 In his order, the District Court stated: "The nature of the relief to be granted in a case such as prescribed here is difficult to formulate." There can be no question about this. It would seem that it ought not to be done without a full hearing.
 
 
 20
 In my judgment there has been sufficient showing of irreparable damage to vested seniority rights of union members to justify the granting of a stay.
 
 
 21
 The order of the District Court is therefore stayed pending appeal.