Rocky Dennis THOMPSON, Plaintiff,

v.

RALSTON PURINA COMPANY and Local Union # 66, Defendants.

No. K 83–544.

United States District Court, W.D. Michigan, S.D.

Dec. 13, 1984.

Rocky Thompson, in pro. per.

Jeffery Reinhard, St. Louis, Mo., William Fallon, Grand Rapids, Mich., for Ralston Purina.

Mary Delehanty, Kalamazoo, Mich., for Union.

## OPINION

ENSLEN, District Judge.

This lawsuit, K *83–544*, arises from a black man's discharge from employment and was brought by Plaintiff without the benefit of counsel. The Complaint accuses the Defendants, Union and Company, of conduct that appears consistent with "hybrid 301" (involving section 301 of the Labor Management Relations Act, 29 U.S.C. § 185, and breach of the fair representation duty) and Title VII violations. The case is now before the Court on the Defendants' Motions for Dismissal and Summary Judgment.

This lawsuit has a rather involved procedural history. There are essential questions of administrative exhaustion and statutes of limitations implicated by the history of the case. Here follows a pertinent chronology:

May 17, 1982—Plaintiff discharged from job.

November 11, 1982—Local 66 refuses to arbitrate the discharge.

November 16, 1982—International Union involved.

March 16, 1983—International Union informs Plaintiff his claim has been disposed.

July 28, 1983—EEOC right-to-sue letter issued, copy to Defendant Company.

August 15, 1983—Lawsuit K *83–407* is filed in Judge Gibson's Court in Grand Rapids with counsel.

October 18, 1983—this lawsuit, K *83–544* is filed in this Court *in pro per.*

October 25, 1983—this *544* lawsuit is served on the Union.

December 2, 1983—the *407* lawsuit is amended.

January 3, 1984—the *407* lawsuit is served on the Union and the Company.

February 9, 1984—*407* lawsuit's attorney moves to withdraw.

March 7, 1984—the *407* attorney is allowed to withdraw.

March 16, 1984—this *544* lawsuit is served on the Company.

April 9, 1984—the *407* lawsuit is dismissed by Judge Gibson at Plaintiff's direction.

The Court was unaware of the *407* lawsuit until the latter stages of this (*544*) lawsuit, at which time the Court directed the Defendants to provide supplementary briefs addressing the legal effect of the *407* case on the instant case. Upon reflection, the Court believes *407* has no effect on the "hybrid 301" claim, but much effect on the Title VII claim.

### A. The "Hybrid 301" Claim

Plaintiff's Complaint was filed on a standard form provided for *pro se* Title VII claimants. At ¶ 9D. the Plaintiff states a claim that the Court construes as a "hybrid 301" claim. The courts are directed in this Circuit to construe Title VII procedures in favor of the complaining party. *Harris v. Walgreen's Distribution Center*, 456 F.2d 588 (CA 6 1972) citing *Sanchez v. Standard Brands, Inc.*, 431 F.2d 455, 460–461 (CA 5 1970).

In a "hybrid 301" claim, the Plaintiff must show that his or her discharge was contrary to the collective bargaining agreement, and also must show that the Union arbitrarily breached its duty of fair representation by not proceeding against the employer. *DelCostello v. Teamsters*, 462 U.S. 151, 103 S.Ct. 2281, 76 L.Ed.2d 476 (1983).

The burden on the Plaintiff is heavy in the "hybrid 301" lawsuit. That burden is purposely placed on the Plaintiff because a private plaintiff who challenges the labor-

management grievance system challenges an important, and necessary system of dispute resolution:

> It is important to bear in mind the observations made in the Steelworker Trilogy that "the grievance machinery under the collective bargaining agreement is at the very heart of the system of industrial self-management... The processing ... machinery is actually a vehicle by which meaning and content are given to the collective bargaining agreement." *United States Parcel Service, Inc. v. Mitchell,* 451 U.S. 56, 63, 101 S.Ct. 1559, 1564, 67 L.Ed.2d 732, (1981), citing *Steelworkers v. Warriors & Gulf Navigation Company,* 363 U.S. 574, 581, 80 S.Ct. 1347, 1352, 4 L.Ed.2d 1409 (1960).

■ The heavy burden on the plaintiff does not mean that he or she should be discouraged from bringing a complaint before the courts. It does mean, however, that the procedural rules are applied more strictly. One such procedural rule is the statute of limitations, which requires that a lawsuit be started on time. If the statutory period runs out before the lawsuit is begun, the suit is barred, and may not be heard by the Court.

■ In the context of a "hybrid 301" lawsuit, the United States Supreme Court recently ruled that the statute of limitations period is six months. *DelCostello, supra.* The Sixth Circuit held previously that the courts should apply the six month statute of limitations, in a case decided on March 4, 1982. *Badon v. General Motors,* 679 F.2d 93 (CA 6 1982). The six month statute of limitations was borrowed by the courts from an administrative rule promulgated by the National Labor Relations Board for administrative proceedings, at 29 U.S.C. § 160(b). A recent decision by the Court of Appeals for the Eleventh Circuit held that in borrowing the six month statutory period for filing claims, the same six month period for service of the Complaint on Defendants was also borrowed; therefore, a "hybrid 301" claim must be *filed and served* within the six month period. *Howard v. Lockheed Georgia Company,* 742 F.2d 612, 101 LC ¶ 11, 196 (1984).

In this case, the first time either of the Defendants was served with a Complaint was on October 25, 1983, or more than seven months after Plaintiff received the International Union's letter.[1] Plaintiff's "hybrid 301" claim against the Union and Ralston clearly was not filed and served on time and is therefore barred.

### B. The Title VII Claim

Plaintiff brought his Title VII Complaint only against the Ralston Purina Company.[2] In contrast to the very strict filing and service requirements in the "hybrid 301" setting, the procedural rules are somewhat relaxed in Title VII cases:

> Such technicalities are particularly inappropriate in a statutory scheme in which laymen, unassisted by trained lawyers, initiate the process. *Love v. Pullman,* 404 U.S. 522, 92 S.Ct. 616, 30 L.Ed.2d 679 (1972).

Courts construing Title VII have been "extremely reluctant" to bar plaintiffs from bringing a claim because of some procedural defect. *Harris v. Walgreen's Distribution Center, supra; Sanchez v. Standard Brands, Inc., supra.*

---

1. The Defendants have very liberally construed the starting point of the statutory time period, in keeping with the spirit of the Court's wishes to grant the *pro se* Plaintiff every deference. Without ruling on the issue, the Court finds strong suggestion in *Badon, supra,* at 98, and *Howard, supra,* that the time period started well before the receipt of the International Union's letter.

2. See affidavit to Defendant Union's Motion for Summary Judgment (David Preston, District Director of EEOC stating no charge has been filed against the Union). *See also* deposition transcript of Plaintiff at p. 195:

> Q: Now you did not file charges with the Michigan Department of Civil Rights or the EEOC against the Union did you?
> A: I didn't. They didn't discriminate against me. They just failed to represent.

*See also* EEOC determination letter of 7–28–83, naming only the Ralston Purina Company as respondent, in the file of lawsuit *407.*

■ The courts' willingness to relax the procedural requirements for Title VII plaintiffs is not limitless. *See, e.g., Hall v. Kroger Baking Company,* 520 F.2d 1204, 1205 (CA 6 1975) (plaintiff waited more than two years after dismissal without prejudice of original lawsuit to file second lawsuit, and was subsequently barred.) Even *pro se* plaintiffs are still generally bound by the courts' rules.

The Defendant Company argues that *Hall, supra,* should apply in this case because Plaintiff voluntarily dismissed his first lawsuit, the *407* case. *See also, Bomer v. Ribicoff,* 304 F.2d 427 (CA 6 1962) (an action dismissed without prejudice leaves the situation the same as if it had never been filed.) The Company's application of *Bomer* would not permit the Court to borrow the EEOC right-to-sue letter from *407* for the purposes of this *544* lawsuit. Defendant Company also argues that inasmuch as the *407* lawsuit was a purely "hybrid 301" suit, and the instant lawsuit is a pure Title VII lawsuit, the element of surprise should bar the *544* lawsuit. *Johnson v. Railway Express Agency,* 421 U.S. 454, 95 S.Ct. 1716, 44 L.Ed.2d 295 (1975).

■ Because the Plaintiff in this case has satisfied the prerequisite of filing a complaint with the EEOC and has provided notice thereby to the Company, surprise should be no problem. And, because he is a *pro se* plaintiff, he should not suffer dismissal for late service. *See* Rule 4(j), Federal Rules of Civil Procedure (excuse for late service for good cause shown).

Once procedural problems are forgiven, however, Plaintiff must still withstand the Company's Motion for Summary Judgment, which is based on matters outside the pleadings, including the deposition of Plaintiff, exhibits of Plaintiff's work records, and various interrogatories. In determining whether or not there are issues of fact requiring a trial, "the inferences to be drawn from the underlying facts contained in the (affidavits, exhibits and depositions) must be viewed in a light most favorable to the party opposing the motion." *United States v. Diebold, Inc.,* 369 U.S. 654, 655,

82 S.Ct. 993, 8 L.Ed. 176 (1962). Especially in the Title VII context, summary judgment is disfavored:

> We have disapproved the use of summary judgment where, although the basic facts were not in dispute, the parties nevertheless in good faith disagreed concerning the inferences to be drawn therefrom. *Equal Employment Opportunity Commission v. United Association of J & A of Plumbing, etc.,* 427 F.2d 1091 (CA 6 1970).

The general disapproval of summary judgment in Title VII reflects the courts' unwillingness to attempt outside the litmus environment of trial to determine the disputed facts.

■ The disapproval of summary judgment does not make insubstantial Title VII claims judgment-proof, however. Once a plaintiff has alleged a possible claim of racial discrimination, the burden shifts to the defendant to show a valid non-discriminatory reason for the employment termination. *McDonnell Douglas Corporation v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). The shifting of the burden is the way the courts avoid insubstantial claims proceeding to trial:

> It is an obvious purpose of the Supreme Court in *McDonnell, supra,* and still more in *Board of Trustees of Keene State College v. Sweeney,* 439 U.S. 24, 99 S Ct 295, 58 L Ed 2d 216 (1978) to make the allocation of burden of proof responsive to the need to stop unsupported and malicious suits short of the necessity for full dress trial. *Kephart v. Institute of Gas Technology,* 630 F.2d 1217; 1219–1220 (CA 7 1980).

In the *Sweeney* case, a closely split Supreme Court had to decide whether the *McDonnell Douglas* case should be read to require that an employer "articulate" or "prove" facts to show that the discharge of an employee was for a legitimate business reason. *Sweeney, supra* at 439 U.S. 26–27, 99 S.Ct. at 296. The majority ruled that the employer need only "articulate" a legitimate, non-discriminatory reason for the employee's discharge. *Id.* at 24, 99 S.Ct. at

295; *See also, Furnco Construction Company v. Waters,* 438 U.S. 567, 578, 98 S.Ct. 2943, 57 L.Ed.2d 957 (1978).

If there is a theoretically substantial distinction between "articulating" and "proving" legitimate business reasons for discharge, it is a distinction which has no significance in this case. As onerous a task as the declaration of summary judgment may be, it is appropriate in this case. For the following reasons, I find that the Ralston Company has met its burden of articulating to a degree commensurate with proving a legitimate and non-discriminatory reason for discharging Plaintiff:

■ The stipulated facts in the pretrial order signed by all parties and filed at the pretrial conference on October 3, 1984, indicate the Plaintiff was terminated because of his extremely poor work history. The discharge arose out of an incident in which Plaintiff asked to leave his job during his normal shift, in order to perform a personal errand. When he was denied permission to leave, he left anyway. (Affidavit of Betty Hillman, receptionist). Later, when Plaintiff was confronted by supervisory personnel, he informed them that he was quitting, although that resignation was subsequently withdrawn. The company's supervisors, however, informed Plaintiff that, due to his extensive poor work history, they would either accept his resignation or terminate Plaintiff on their own initiative.

The affidavits and exhibits in this case indicate that Plaintiff did, in fact, have an extensive poor work history. (See Pretrial Order Stipulation of Facts, pp. 17–19, containing a list of more than a dozen separate reprimands, numerous written warnings, a three week disciplinary suspension, and a three month disciplinary suspension.)

Plaintiff vaguely has alleged that the Company, in denying his request to leave on personal business during his work shift, treated him differently than a "white woman". The Company denies any knowledge of any "white woman" so treated. (See Jan Eley affidavit filed August 24, 1984). Plaintiff does not effectively respond to that rebuttal.

The Company has provided a racial list of all employees terminated during the five years prior to Plaintiff's discharge, at Plaintiff's request, and that list does not indicate a Company policy or practice of racial discrimination. (Defendants' Answers to Plaintiff's Second Set of Interrogatories, filed August 24, 1984).

This case has been litigated very actively by the Plaintiff during the past year and he has not offered more than conclusory statements and assertions of discriminatory practices to prove his claim. He states that the Company "cannot prove my work record" (Plaintiff's summary judgment reply, filing number 57, ¶ 5), but simply does not rebut the Company's contentions in a meaningful manner. (See ¶ 6 of the reply, *Id,* wherein Plaintiff explains his absence from work in unacceptable terms.) Also see conclusory allegations at p. 4 of Plaintiff's answers to interrogatories dated July 3, 1984. Plaintiff's deposition strongly suggests that he knew his work record was very poor. (Thompson Deposition Transcript pp 12, 18, 30, 31, 42, 47, 52, 53, 61–62; Deposition Exhibits A, B, C, H, K, L, M, N); that he was insubordinate on more than one occasion (Thompson Deposition Transcript pp. 70, 72, 141, 150) and that he knowingly committed violations over the course of his employment, and was disciplined sufficiently to have been on notice that his employment position was in jeopardy because of legitimate, employment-related concerns of the Company.

Again, this case has been in the Court for a number of months, and the record will indicate that this Plaintiff, with the Court's scheduling assistance and communication, has participated very actively and enthusiastically in the discovery process. Still, the facts to support his allegations do not appear. As his Deposition testimony at p. 189 indicate, he has many theories about the Company's discriminatory conduct, but the theories are so inchoate as to defy even his own description.

In considering the Defendant Company's Motion for Summary Judgment, the Court

has strained to comply with the spirit of both the case law and the statutory law. The Court has provided this Plaintiff a viable forum in which to develop his claim, and has assessed the entire record developed to this date. In all instances of contact between the Court and the Plaintiff, the Plaintiff has proven himself a polite and cooperative individual, and he has conducted his case as well as any *pro se* litigant the Court has encountered.

In the final analysis, however, the Plaintiff has not raised a material factual issue sufficient to rebut the Defendant Company's Motion for Summary Judgment. If a summary judgment is ever appropriate in an employment discrimination case, it is appropriate here.

Accordingly, Plaintiff's case is dismissed.