Oliver **EDWARDS**, Plaintiff,

v.

**WHIRLPOOL CORPORATION, AVIATION DEPARTMENT,** Defendant.

No. K86–90.

United States District Court, W.D. Michigan.

Aug. 28, 1987.

---

Rhonda R. Russell, Benton Harbor, Mich., for plaintiff.

Keith C. Hult, Matkov, Griffin, Parsons, Salzman & Madoff, Chicago, Ill., Brad A. Rayle, Howard & Howard, Kalamazoo, Mich., for defendant.

## OPINION

ENSLEN, District Judge.

There are three motions pending before the Court in this action: (1) defendant's June 15, 1987 Motion for Summary Judgment; (2) defendant's July 24, 1987 Motion to Strike Plaintiff's "Exhibits" which were Submitted in Response to Defendant's Motion for Summary Judgment; and (3) plaintiff's August 6, 1987 Motion to Allow Filing of Late Affidavits. The Court will resolve the latter two motions first, after a brief introduction to the facts of this case.

Plaintiff is a former employee of the defendant who commenced his employment with Whirlpool at the company's Benton Harbor facility on June 5, 1961 as an aircraft cleaner. In 1965, plaintiff obtained his "airframe" certification from the Federal Aviation Administration ("FAA") and was promoted to the position of airplane mechanic, even though he lacked full mechanic certification because he did not have a "power plant" certification. Plaintiff never did receive a power plant certification, despite defendant's assistance, and in July 1982 defendant created an "airplane mechanic-airframe" position for him. From the time of his employment through October of 1984, plaintiff performed his tasks well and received either "fully competent" or "satisfactory" performance evaluations. As late as February 1985 plaintiff's performance was deemed to be satisfactory.

Defendant alleges that beginning in October 1984, when plaintiff's old supervisor (Bernard Krych) retired and Douglas Fairchild replaced him, plaintiff's job performance steadily deteriorated. In particular, defendant alleges that plaintiff committed the following work-related errors during this time period: (1) he left an engine cowl

door open and the locking plate off of a fuel drain; (2) he improperly refueled a plane; (3) he left a propeller off the ground fine mark line and left its gust locks off; (4) he failed to record and remember several reported in-flight problems, called "squaks"; and (5) he on several occasions failed to fill out necessary maintenance documentation on Computerized Aircraft Maintenance Program ("CAMP") forms, which defendant uses to comply with FAA requirements. Mr. Fairchild counseled plaintiff on these problems, pl. dep. I at 33–34, and in June 1985 gave plaintiff a "marginal" employment evaluation.

In light of these problems, defendant determined that plaintiff should undergo some medical examinations. Affidavit of David W. Hills, M.D. ¶ 2–3. Dr. Hills recommended that plaintiff be examined by a physician, a neurologist, and a psychologist, and arranged for the appropriate examinations. *Id.* ¶¶ 3–4. On September 5, 1985 plaintiff met with Dr. Hills, Mr. Fairchild, and Dean Knapp, who is defendant's Human Resources Administrator. At that time, defendant placed plaintiff on medical leave, with pay, and requested him to attend the medical examinations that Dr. Hills had scheduled. Plaintiff did not attend the examinations, and on September 6, 1985 filed a complaint with the Michigan Department of Civil Rights alleging race discrimination. On September 25, 1985 defendant, pursuant to a letter written by Mr. Fairchild and at a meeting between plaintiff, his counsel, and company officials, placed plaintiff on probation. The probation letter contained the following terms and conditions:

> Effective immediately you are placed on probation. Due to the seriousness of your job as an airframe mechanic, and because of the terrible consequences which could result from an error on your part, the Company cannot return you to work without a complete evaluation of your medical condition. Accordingly, the first requirement of your probation is to seek medical opinions in a manner specified by the Company. If it is possible, we will work with you to use professionals of your choice. Additionally, you are to follow any course of treatment which might be recommended in the course of seeking those opinions.

> If you refuse to seek these medical opinions, you will be terminated. However, if you agree to this course of action you will remain on medical leave until all tests are complete and the results are reviewed by you.

> If the medical results indicate that no diagnosable condition is causing or contributing to your performance deficiencies, you will be placed on 60 days probation with the expectation that you will take the needed corrective actions in the areas listed to meet acceptable job performance and to sustain that performance. Specific ways of achieving those standards will be reviewed with you prior to your reinstatement to active employment. If you are unable to make the needed improvements and to sustain such improvements you will be subject to immediate termination.

Plaintiff did not undergo a medical evaluation, and on October 4, 1985 defendant terminated his employment with it.

Plaintiff filed suit on March 24, 1986, raising five claims for relief. The parties agree that the following three claims remain in the case: (1) plaintiff's claim that defendant discharged him on account of his race, in violation of 42 U.S.C. § 1981; (2) plaintiff's claim that defendant discharged him for having filed a race discrimination complaint with the Michigan Department of Civil Rights, in violation of 42 U.S.C. § 2000e–3(a); and (3) plaintiff's claim that defendant discharged him in violation of the just cause provision of the parties' contract of employment. The parties have thoroughly briefed the issue of whether the Court should allow plaintiff to proceed to trial on these issues.

I. *Defendant's Motion to Strike and Plaintiff's Motion to Permit Late Filing*

As part of his response to defendant's motion for summary judgment, plaintiff submitted fifteen (15) exhibits for the Court to consider. Fourteen of the fifteen exhibits were not authenticated in any way and bore no other indicia of reliability. Ac-

cordingly, defendant requested the Court to strike the exhibits. In response to defendant's motion, plaintiff tendered his affidavit, in which he sought to authenticate seven of the fourteen unauthenticated exhibits, and requested the Court to accept the late filing of his affidavit. Defendant opposes plaintiff's request because plaintiff has not demonstrated why he did not submit his affidavit in conjunction with the exhibits and because plaintiff allegedly did not disclose the exhibits during the discovery period.

The Court will accept plaintiff's late affidavit and will consider, in deciding defendant's motion, the seven exhibits he seeks to authenticate in it. Specifically, the Court will consider (1) exhibit 1, which is the list of doctors and examination times defendant gave plaintiff at the September 5th meeting; (2) exhibit 2, which is a letter plaintiff wrote to Mr. Knapp following the September 5th meeting; (3) exhibit 4, which is the September 25, 1985 letter of probation; (4) exhibit 5, which are copies of notes Mr. Fairchild maintained on plaintiff and other employees; (5) exhibit 6, which is the October 4, 1985 letter of termination; (6) exhibit 7, which are medical notes concerning a head injury plaintiff received in 1980; and (7) exhibit 8, which are excerpts from plaintiff's personnel file. I will not consider exhibits 3 and 9–14, which apparently are excerpts from defendant's employees manual, because I have no proof that they are accurate and authentic. As plaintiff argues, Mr. Williamson refers to portions of the employees handbook in the affidavit he submitted in support of defendant's motion for summary judgment. I cannot be sure, however, that the excerpts contained in plaintiff's response come from the same handbook to which Mr. Williamson refers.

■ I reject defendant's request that I also not consider the seven exhibits listed above. I recognize the force of its arguments that plaintiff has given no reason why he filed his affidavit late and that plaintiff apparently did not disclose these materials during the discovery process. In ruling on a summary judgment motion,

however, I must determine whether there exist genuine issues of material fact to be tried, and in that respect am obligated to search the entire record to discern whether such issues exist. Defendant, moreover, has not demonstrated that it is unduly prejudiced by plaintiff's use of these exhibits; in particular, it does not dispute their accuracy or contend that it did not know of their existence prior to plaintiff's use of them in his response to the motion for summary judgment. In light of defendant's extensive discussion of plaintiff's factual claims, I fail to see how it will suffer undue prejudice if I consider the exhibits. The Court accordingly will enter an order granting plaintiff's motion to allow the filing of his late affidavit and granting in part and denying in part defendant's motion to strike plaintiff's exhibits.

## II. *Defendant's Motion for Summary Judgment*

Defendant's motion encompasses all three of plaintiff's claims for relief. I shall first discuss plaintiff's section 1981 claim. I then shall cover his *Touissant* claim, and finally his retaliation claim.

Section 1981 provides that "[a]ll persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, ... and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other." 42 U.S.C. § 1981. In an employment setting, section 1981 prohibits employers from engaging in "purposeful or intentional discrimination" on the basis of race. *Cooper v. City of North Olmsted*, 795 F.2d 1265, 1270 n. 3 (6th Cir.1986). "This intent requirement may be satisfied by direct allegations and proof of invidious discriminatory animus or circumstantially demonstrated by alleging and proving discriminatory conduct, practices, or the existence of significant racially disproportionate impact." *Leonard v. City of Frankfort Electric and Water Plant Board*, 752 F.2d 189, 193 (6th Cir.1985).

As in a Title VII case, if the plaintiff in a section 1981 case seeks to prove his claim by circumstantial evidence, then a court should apply a burden shifting approach. Under this approach, the plaintiff "must first establish a *prima facie* case of intentional discrimination, which the defendant [then] can rebut by producing a legitimate, nondiscriminatory reason for the discharge." *Cooper*, 795 F.2d at 1271. "If the defendant meets this burden of production, the plaintiff must then prove that defendant's asserted motive is pretextual. The need to prove pretext merges with the plaintiff's ultimate burden of persuading the court that she was the victim of intentional discrimination, a burden that the plaintiff retains at all times." *Id.*

This burden shifting approach does not apply, however, if the "plaintiff presents credible, direct evidence of discriminatory animus." *Trebovitz v. Fiscal Court of Adair County*, 825 F.2d 111, 115 (6th Cir. 1987). "Direct evidence and the *McDonnell Douglas* formulation are simply different evidentiary paths by which to resolve the ultimate issue of defendant's discriminatory intent." *Blalock v. Metals Trades, Inc.*, 775 F.2d 703, 707 (6th Cir.1985). "'Where the evidence for a prima facie case consists ... of direct testimony that defendants acted with a discriminatory motivation, if the trier of fact believes the prima facie evidence the ultimate issue of discrimination is proved; no inference is required.'" *Id.* (citation omitted).

Once the plaintiff has established, by either direct or circumstantial evidence, by a "preponderance of the evidence that the employer's decision to take an adverse employment action was more likely than not motivated by a criterion proscribed by the statute," the burden of proof shifts to the employer "to prove that the adverse employment action would have been taken even in the absence of the impermissible motivation, and that, therefore, the discriminatory animus was not the cause of the adverse employment action." *Id.* at 712. In a direct evidence case, "once the district court accepts the plaintiff's direct evidence, the employer's asserted nondiscriminatory reason for its action, which must merely be 'articulated' under *McDonnell Douglas*, effectively becomes an affirmative defense on which the employer bears the burden of proof." *Terbovitz*, at 115.

In conjunction with these section 1981 standards, the Court also must consider the standards applicable to motions for summary judgment. Rule 56(c) provides that a court shall render summary judgment for the moving party if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FRCP 56(c). As the Sixth Circuit recently discussed, rule 56 establishes a burden-shifting method for analyzing summary judgment motions:

> The burden is on the moving party to show conclusively that no genuine issue of material fact exists ... The district court must view the evidence with all inferences drawn therefrom in the light most favorable to the party opposing the motion.
>
> Once the moving party presents evidence sufficient to support the motion under Rule 56(c), the adverse party must set forth specific facts showing that there is a genuine issue for trial ... The nonmoving party is not entitled to a trial merely on the basis of allegations; significant probative evidence must be presented to support the complaint.... Thus Rule 56(e) requires a shifting of burdens to the opposing party if the moving party has satisfied Rule 56(c). If the court finds after reviewing the evidence that no genuine issue of material fact exists, the moving party is entitled to a judgment as a matter of law....

*Gregg v. Allen–Bradley Co.*, 801 F.2d 859, 861 (6th Cir.1986) (citations omitted). As the Supreme Court recently stated, "the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time of discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the bur-

den of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265, 273 (1986). The nonmoving party must designate " 'specific facts showing that there is a genuine,issue for trial.' " *Id.* 477 U.S. at 322, 106 S.Ct. at 2553, 91 L.Ed.2d at 274 (citation omitted).

The nonmoving party is not required to respond with "evidence in a form that would be admissible at trial." *Id.* It must, however, establish that there is a genuine factual issue to be tried. "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.' " *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538, 552 (1986) (citation omitted). Although the trial judge cannot "weigh the evidence and determine the truth of the matter," "there is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury [or other factfinder] to return a verdict for that party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202, 212 (1986). In making this determination, the trial court must apply the substantive standard of proof that would prevail at trial. Finally, I also must consider that courts generally are " 'reluctant to dismiss by summary judgment ... discrimination suits where ... motive and intent are crucial elements and the proof is in the hands of the alleged wrongdoers.' " *Cooper*, 795 F.2d at 1272 n. 4 (citation omitted). Nonetheless, a section 1981 plaintiff must produce sufficient evidence in support of his claim to justify a trial on the merits. *See Thompson v. Ralston Purina Co.*, 599 F.Supp. 756, 759–60 (W.D.Mich.1984).

■ In this case, the Court reluctantly concludes that plaintiff has failed to designate specific facts showing that there are genuine issues to be tried at the scheduled bench trial. I base my decision on four grounds. First, I find that defendant has satisfied its initial burden under rule 56(c) of demonstrating that there exist no genuine issues of material fact to be tried. Sec-

ondly, I find that defendant has articulated a legitimate, nondiscriminatory rationale for its decision to discharge plaintiff from its employ. Thirdly, plaintiff has failed to produce either sufficient probative evidence to suggest that defendant's nondiscriminatory rationale was a mere pretext or sufficient direct evidence that defendant acted with a discriminatory intent.

■ Specifically, while plaintiff has suggested that Mr. Taber may harbor a general discriminatory animus toward blacks, he has not produced sufficient evidence indicating that this animus influenced Mr. Taber's decision to discharge him. More importantly, plaintiff has produced little or no evidence suggesting that either (1) Mr. Fairchild, who was directly responsible for documenting plaintiff's work difficulties, suggesting that plaintiff undergo medical examinations, and placing plaintiff on probation, (2) Dr. Hills, who determined that plaintiff should undergo medical examinations and arranged for the examinations, or (3) Mr. Knapp, who contacted Dr. Hills regarding plaintiff's situation, acted with a discriminatory animus. While plaintiff has produced evidence indicating that white mechanics occasionally do not correctly fill out timecards and CAMP forms, and that before Mr. Fairchild became his immediate supervisor white employees occasionally made fairly serious mechanical errors, he has not produced evidence suggesting that any white mechanics suffered from a pattern of errors like he did in late 1984 and 1985.

Similarly, while plaintiff has denied making many of the mistakes or job performance errors on which defendant based its decision to require him to undergo medical examinations, he has not produced any evidence suggesting that defendant erred or was unreasonable in concluding that he was responsible for the errors. Fourthly, and finally, as an alternative ground for my decision, I conclude that plaintiff has not produced sufficient evidence demonstrating that he will be able to prove at trial that he was meeting the normal requirements for his job, and thus will be

unable to satisfy that element of his *prima facie* case.

The Court believes that its four grounds for decision are well supported by the record and thus require little discussion. As the Court explained previously, under rule 56(c) defendant bears the initial burden of demonstrating that no genuine issues of material fact exist. It did that in its initial submission. The deposition testimony and Richard Bolin's affidavit demonstrate that plaintiff was experiencing performance difficulties in 1984 and 1985. Affidavit of Richard Bolin ¶ 3; Fairchild Dep. at 5–11. The Court observes here that plaintiff does not assert that Mr. Bolin had any racial animus toward him. Plaintiff, moreover, acknowledged many of his performance difficulties, although he denied others. *E.g.*, Pl. Dep. II at 168; Pl. Dep. III at 78–79. I note that plaintiff also acknowledged at one of his depositions that although his February 1985 job rating was satisfactory, his mid–1985 rating had dropped to marginal. Pl. Dep. I at 120.

█ In addition, Dr. Hills states in his affidavit that he recommended that plaintiff undergo a thorough medical examination. Hills Affidavit ¶¶ 2–3. As the Court has mentioned, plaintiff does not contend that Dr. Hills bore a discriminatory animus toward him. The Court thus concludes that defendant's initial submission indicates that it reasonably required plaintiff to undergo a medical examination. An employer can inquire into the medical condition of a long-term employee who has suffered from a sudden deterioration in job performance. An employer also may condition an employee's continued employment on the satisfactory completion of a medical examination.

Faced with defendant's submission, plaintiff's task was to identify specific facts creating a need for trial. In his submission, plaintiff attempts to establish that defendant treated him differently than white employees and that Mr. Taber and Mr. Fairchild in particular treated him unfairly. The evidence in the record does suggest that white employees occasionally made errors similar to those plaintiff allegedly made. Those errors, however, were limited to problems with time cards and CAMP forms and were monitored and remedied by Mr. Fairchild. Fairchild Dep. at 90. There is little or no evidence suggesting that during Mr. Fairchild's tenure white mechanics made serious errors that Mr. Fairchild ignored.

The evidence also suggests that Mr. Taber on one occasion stated that he was the "head nigger," Taber Dep. at 5, and on another occasion referred to plaintiff as his "problem child." *Id.* at 11. These remarks seriously trouble the Court, and standing alone they indicate that Mr. Taber harbored some kind of racial animus toward plaintiff. If Mr. Taber was solely or even primarily responsible for plaintiff's discharge, the Court may have denied defendant's motion. The record indicates, however, that Mr. Fairchild, Dr. Hills, and Mr. Knapp also played critical roles in the sequence of events leading to plaintiff's discharge, and plaintiff has failed to establish that there exists a genuine issue as to whether any of these individuals harbored a discriminatory animus toward him.

In summary, the record indicates that defendant had a legitimate reason to be concerned about plaintiff's work performance and to require him to undergo medical examinations. The Court appreciates plaintiff's concern about being asked to undergo the medical examinations, particularly since it appears defendant never formally documented the outcome of the September 5th meeting in writing and had no established procedure for handling such a situation. Defendant explained to plaintiff the reason for its request, however, and offered him the option of seeing his own doctors. Plaintiff refused to see any physicians, and I cannot find that defendant acted improperly in terminating his employment with it. Defendant may not have followed an appropriate procedure in plaintiff's situation, particularly given that plaintiff had been working for it since 1961. An unwise policy or an unjust situation is not necessarily unlawful, however, and in this instance plaintiff has failed to produce significant probative evidence to support his section 1981 claim.

I believe from my review of the file that this is the kind of case that never should have gone to court. With a little patience and understanding, the parties probably could have settled their differences amicably. Unfortunately, they did not do so and the Court had to decide defendant's motion for summary judgment. Such motions are always difficult to decide, particularly in discrimination cases where it is hard to divine a person's intent from a cold record. Nonetheless, that is my task, and in this instance I find that plaintiff has failed to demonstrate the need for a trial on his claim of race discrimination.

Plaintiff's next claim is that defendant discharged him without just cause, in violation of his employment contract. Plaintiff's claim is based on the Michigan Supreme Court case of *Toussaint v. Blue Cross & Blue Shield of Michigan,* 408 Mich. 579, 292 N.W.2d 880 (1980), in which that Court held that " 'an employer's express agreement to terminate only for cause, can give rise to rights enforceable in contract.' " *Struble v. Lacks Industries, Inc.,* 157 Mich.App. 169, 173, 403 N.W.2d 71 (1986), *quoting Toussaint,* 408 Mich. at 610, 292 N.W.2d 880. In this case, plaintiff argues that various provisions of defendant's employee handbook create a just cause employment agreement. He also contends that defendant's statement at the front of the handbook that the book shall not be "deemed to constitute ... a contract of employment" is insufficient to disclaim defendant's liability under *Toussaint.* Plaintiff believes that defendant can disclaim any intent to create a just cause contract of employment only by expressly stating that an at-will relationship exists between it and its employees.

■ The Court believes that plaintiff has misinterpreted the Michigan Supreme Court's holding in *Toussaint,* and finds that defendant has adequately disclaimed its intent to create a just cause employment relationship. The *Toussaint* holding created an exception to the general rule that employment relationships are terminable at the will of either party. *Dell v. Montgomery Ward and Co.,* 811 F.2d 970, 971 (6th Cir.1987). The Michigan Supreme Court suggested that a company could protect itself from liability by expressly disclaiming its intent to create anything but an at-will employment relationship. It did not find, however, that a company creates a just cause contract if it issues an employee handbook without including the magical phrase that the employment relationship remains an "at-will" relationship. In this case, I find that defendant adequately protected itself by stating that it did not intend for the employee handbook to create a contract of employment. *See MacDougal v. Sears, Roebuck & Co.,* 624 F.Supp. 756, 759 (E.D.Tenn.1985). Plaintiff's indication in his deposition that he was not familiar with the terms of the employee handbook reinforces my holding. Pl. Dep. II at 209–10.

Plaintiff's final claim is that defendant discharged him because he had filed a race discrimination complaint with the Michigan Department of Civil Rights. Title VII provides in pertinent part that "[i]t shall be an unlawful employment practice for an employer to discriminate against any of his employees ... because he has made a charge ... in an investigation, proceeding, or hearing under this subchapter." 42 U.S. C. § 2000e–3(a). A plaintiff can establish a *prima facie* case of retaliatory discharge by establishing (1) that he engaged in an activity protected by Title VII; (2) that defendant knew of his exercise of his civil rights; (3) that the defendant thereafter took an employment action adverse to the plaintiff; and (4) that there was a causal connection between the protected activity and the adverse employment action. *Wrenn v. Gould,* 808 F.2d 493, 500 (6th Cir.1987).

■ In this case, plaintiff filed a race discrimination complaint against defendant on September 6, 1985. The Michigan Department of Civil Rights notified defendant of the complaint on September 19, 1985. Defendant placed plaintiff on probation on September 25, 1985 and discharged him on October 4, 1985. Prior to September 25, 1985 defendant had not explicitly threatened to fire plaintiff if he did not undergo

medical examinations. This sequence of events constitutes plaintiff's only evidence of a retaliatory discharge. I find that it is insufficient to establish a *prima facie* case. *Cooper*, 795 F.2d at 1272 (the mere fact that an employee is discharged after filing "a discrimination claim is insufficient to support an inference of retaliation"). *But see Wrenn*, 808 F.2d at 500 (indicating that the requisite causal connection "may be demonstrated by the proximity of the adverse action to the protected activity"). Absent any other evidence of a retaliatory discharge, I will grant defendant's motion on this claim as well.