890 F.2d 417
 51 Fair Empl.Prac.Cas. 1472
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Gayle Y. SINGLETON, Plaintiff-Appellant,
v.
KELLOGG COMPANY, Defendant-Appellee.
 No. 89-1073.
 United States Court of Appeals, Sixth Circuit.
 Nov. 29, 1989.
 
 Before BOYCE F. MARTIN, Jr. and ALAN E. NORRIS, Circuit Judges, and CONTIE, Senior Circuit Judge.
 PER CURIAM.
 
 
 1
 Plaintiff-appellant, Gayle Y. Singleton, appeals from the order of the district court granting Kellogg Company's, defendant-appellee's, motion to dismiss for failure to state a claim or, alternatively, for summary judgment. For the following reasons, we affirm the order of the district court.
 
 I.
 
 2
 Kellogg Company hired plaintiff as an associate food technologist on April 27, 1981. Plaintiff is a black female recruited by Kellogg in an affirmative action outreach effort. On August 22, 1981, plaintiff fell from a man-lift while at work, sprained her left knee, and returned to her regular duties on September 8, 1981. On December 3, 1981, plaintiff had the first of five arthroscopic surgeries. She returned to work on December 21, 1981. Plaintiff stopped working in February 1982 and had a second arthroscopic surgery. She did not return to work until almost nine months later. During this absence plaintiff had a third arthroscopic surgery. She returned to work in November 1982 with medical restrictions covering the amount of walking, lifting, and standing she was to do.
 
 
 3
 Defendant maintains that it accommodated the conditions of plaintiff's employment to her medical restrictions by providing her with a cart to transport work materials, a chair to sit on while working, a handicapped parking space, and a flexible work schedule. Other employees were asked to perform her out of town duties and her assigned tasks that exceeded her medical restrictions.
 
 
 4
 On October 7, 1983, plaintiff took her third medical leave for her fourth arthroscopic surgery. Plaintiff returned in January 1984 with increased medical restrictions and indicated that she could not perform her job. Defendant reassigned plaintiff as a project chemist technologist, which defendant describes as a sedentary position in a laboratory requiring virtually no walking, climbing, or lifting. In March 1984, plaintiff had a fifth arthroscopic surgery at the Mayo Clinic. In April of 1984, plaintiff attended a pain clinic in Lansing, Michigan. On December 22, 1984, plaintiff and her physician indicated that she needed a vacation. Plaintiff returned to work on January 1, 1985, and indicated that her leg bothered her. On January 2, 1985, plaintiff provided defendant with a medical slip on her condition. After that date, plaintiff did not return to work.
 
 
 5
 In February or March of 1985, defendant decided to have independent physicians evaluate plaintiff's condition. On May 16, 1985, Dr. Wallace B. Duffin, an orthopedic surgeon, examined plaintiff. His report indicated that the patient must have an incredibly low pain tolerance and that he had never known plaintiff's condition to be completely disabling. He could not eliminate the possibility that strong secondary gain motives kept her from returning to her job. On June 21, 1985, Dr. Anthony Petrilli, a psychiatrist, interviewed plaintiff. In his report of July 12, 1985, Dr. Petrilli indicated that plaintiff was not psychologically disabled from performing her job, but that secondary gain motives could be influencing her.
 
 
 6
 On June 12, 1985, plaintiff filed a fair employment practice charge with the Michigan Department of Civil Rights (MDCR) and with the Equal Employment Opportunity Commission (EEOC). On August 19, 1985, defendant discharged plaintiff. Defendant maintains that the discharge was based on the medical evaluations by the two independent physicians, which indicated that plaintiff removed herself from employment when she was, in fact, able to perform her assigned duties. On August 21, 1985, plaintiff filed a second discrimination charge with the MDCR and the EEOC. On July 30, 1986, an MDCR investigator notified plaintiff that her charge was not supported by sufficient evidence. On January 28, 1985, plaintiff filed a petition with the Bureau of Workers' Disability Compensation. Plaintiff's petitions were heard during the summer and fall of 1987. A Workers' Disability Compensation magistrate awarded plaintiff benefits on March 9, 1988.
 
 
 7
 In October 1985, plaintiff filed a lawsuit against Kellogg in state court, alleging sex and race discrimination. This lawsuit was voluntarily dismissed on December 8, 1986. The initial complaint in the present action was filed on September 23, 1986. Pursuant to stipulation on January 21, 1988, the court dismissed several counts from this action. The remaining claims consist of: (1) racially discriminatory discharge in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. Sec. 2000e et seq.; 42 U.S.C. Sec. 1981; and the Michigan Elliot-Larsen Civil Rights Act. Mich.Comp.Laws Secs. 37.2101-.2804; (2) retaliatory discharge for filing a workers' disability compensation petition and civil rights charge in violation of Title VII, 42 U.S.C. Sec. 2000e-3(a) and Elliot-Larsen Civil Rights Act, Mich.Comp.Laws Sec. 37.2202; and (3) defendant's failure to accommodate plaintiff's handicap from September 2, 1983, to February 1984, in violation of the Michigan Handicappers' Civil Rights Act (HCRA). Mich.Comp.Laws Secs. 37.1101-.1607.
 
 
 8
 On June 3, 1988, defendant filed a motion to dismiss, or alternatively, for summary judgment with respect to the remaining claims. The district court, after hearing oral argument and reviewing the entire record, concluded that plaintiff had not satisfied the applicable legal standards to avoid summary judgment on her racially discriminatory discharge and retaliatory discharge claims. The court also concluded that plaintiff was not a handicapped person within the meaning of the HCRA and dismissed that claim. Plaintiff timely filed this appeal.
 
 II.
 
 9
 Because the district court considered affidavits and other record evidence outside the pleadings, we will consider its order to dismiss the discriminatory and retaliatory discharge claims as an order for summary judgment. Fed.R.Civ.P. 12(b)(c). The general standard an appellate court applies in reviewing a grant of summary judgment is the same as the district court employs initially under Federal Rule of Civil Procedure 56(c). Gutierrez v. Lynch, 826 F.2d 1534, 1536 (6th Cir.1987); 10 C. Wright, A. Miller, & M. Kane, Federal Practice and Procedure Sec. 2716 (1983). The burden on the moving party may be discharged by showing that there is an absence of evidence to support the nonmoving party's case. Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). Summary judgment is warranted if the non-moving party fails to make a sufficient showing to establish each material factual element of a valid claim. As the Supreme Court in Celotex states:
 
 
 10
 In our view, the plain language of Rule 56(c) mandates the entry of summary judgment after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial. The moving party is 'entitled to judgment as a matter of law' because the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof.
 
 
 11
 Id. at 322-23.
 
 
 12
 Defendant argues that one of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims and that there is an absence of evidence to support plaintiff's case.
 
 A.
 
 13
 In order to establish a prima facie case of racially discriminatory discharge in violation of Title VII, plaintiff has the burden of proof to establish the existence of racially discriminatory intent in her firing. See McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973); Leonard v. City of Frankfort Elec. and Water Plant Bd., 752 F.2d 189, 193 (6th Cir.1985). The same analysis and evidentiary burdens apply to Elliot-Larsen claims. See Nixon v. Celotex Corp., 693 F.Supp. 547, 54-55 (W.D.Mich.1988). To establish a prima facie case, plaintiff must show that (1) she was a member of a protected class; (2) she was discharged without valid cause; (3) she was treated differently than similarly situated non-minorities; and (4) the employer solicited applicants for the position from which she was discharged. Potter v. Goodwill Indus., 518 F.2d 864, 865 (6th Cir.1975).
 
 
 14
 After the plaintiff establishes a prima facie case, the burden of proof shifts to the employer who must then articulate some legitimate nondiscriminatory reason for the discharge. The burden then shifts back to the plaintiff to establish that the reason proffered by defendant for discharge was merely pretextual. Burdine, 450 U.S. 248, 256 (1981); Brooks v. Ashtabula County Welfare Dep't, 717 F.2d 263, 266 (6th Cir.1983), cert. denied, 466 U.S. 907 (1984).
 
 
 15
 Plaintiff claims that defendant's purported reason for firing plaintiff was pretextual because it was manifestly false. Plaintiff alleges that at the time that defendant fired her she was clearly unable to perform her job due to her five surgeries and severe psychiatric illness. Plaintiff alleges that defendant's use of two independent physicians' reports is "incredibly phony" and demonstrates that her firing was a pretext. In support of this argument, plaintiff refers to the later determination of a Worker's Compensation Bureau administrative law judge that Dr. Petrilli's report was "at best inaccurate."[1]
 
 
 16
 Plaintiff also argues that five similarly situated white co-workers, who had been injured, were accommodated and not discharged. Defendant argues that the facts of plaintiff's case are unique as she missed approximately 21 months of work in her 52-month period of employment after the company had made great efforts to accommodate her physical problems and that it had justifiably relied on medical reports in discharging her. Courts have recognized that a defendant employer can inquire into a plaintiff employee's health and rely on the medical reports of the examining physicians in making employment determinations. Edwards v. Whirlpool Corp., 678 F.Supp. 1284, 1290 (W.D.Mich.1987).
 
 
 17
 We find that plaintiff has not set forth facts showing that there is a genuine issue for trial. Plaintiff has not established a prima facie case of racial discrimination because she has not demonstrated that her discharge was without cause or that she was treated differently than similarly situated white co-workers. Plaintiff has merely conclusorily denied the validity of the physicians' reports upon which defendant relied. Even if the information in the reports were inaccurate, this does not establish a lack of good faith on behalf of defendant. Plaintiff concedes that at the time of her discharge she was totally disabled and that she has not sought further employment. Thus, by her own admission, plaintiff was not physically capable of the employment from which she alleges she was discharged because of race.
 
 
 18
 Plaintiff also fails to establish that she was treated differently than similarly situated white employees. She has not established that any of the allegedly comparable white employees were similarly situated as she did not show that they were engaged in comparable activities. Stotts v. Memphis Fire Dep't, 858 F.2d 289, 298 (6th Cir.1988). Nor did she specify in what way they were treated differently, other than that they were not discharged. Moreover, her allegations of disparate treatment are not supported by the evidence as defendant made considerable efforts to accommodate plaintiff and assigned her to a less physically demanding job. Only after plaintiff indicated that she could not perform her employment at all, which was contradicted by the independent physicians' reports, was she discharged.
 
 
 19
 Because of the failure of proof concerning an essential element of plaintiff's prima facie case, we hold that defendant is entitled to summary judgment as a matter of law on the racially discriminatory discharge claims pursuant to Title VII and the Michigan Elliot-Larsen Civil Rights Act.
 
 B.
 
 20
 We affirm the district court's dismissal of defendant's Sec. 1981 claim, but on the basis of a different analysis than that used by the district court. In Patterson v. McLean Credit Union, 109 S.Ct. 2363 (1989), the Supreme Court held that Sec. 1981 covers only racially discriminatory conduct at the initial formation of an employment contract and conduct which impairs the right to enforce contractual obligations through legal process. Id. at 2373. Plaintiff did not contend that the alleged discriminatory discharge involved impairment of her right to "make" or "enforce" contracts. In light of Patterson, plaintiff's claim of racially discriminatory discharge is no longer cognizable under section 1981. See Becton v. Burlington Northern R.R. Co., No. 86-6136, slip op. at ---- (6th Cir. July 10, 1989) (per curiam) (claim of racial harassment and job demotion is no longer cognizable under section 1981 because it involves "postformation conduct").
 
 III.
 
 21
 Plaintiff's claims of retaliatory discharge are based on Section 704(a) of Title VII, 42 U.S.C. Sec. 2000e-3(a), which provides:
 
 
 22
 It shall be an unlawful employment practice for an employer to discriminate against any of his employees ... because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter.
 
 
 23
 Similarly the Elliot-Larsen Civil Rights Act also prohibits retaliatory conduct. Mich.Comp.Laws Sec. 37.2202.
 
 
 24
 A prima facie case of retaliatory discharge requires that: (1) plaintiff engage in activity protected by fair employment statutes; (2) the exercise of her civil rights was known by defendant; (3) defendant adversely affected plaintiff's employment; and (4) a causal connection exists between plaintiff's protected activity and defendant's adverse employment action. Wrenn v. Gould, 808 F.2d 493, 500 (6th Cir.1987). The mere fact that an employee is discharged after filing a discrimination claim is by itself insufficient to support an inference of retaliation. Edwards v. Whirlpool, 678 F.Supp. at 1292.
 
 
 25
 The shifting burden analysis developed for racially discriminatory discharge actions in McDonnell Douglas and Burdine also applies to retaliatory discharge claims. EEOC v. Bronson Methodist Hosp., 489 F.Supp. 1066, 1069-70 (W.D.Mich.1979). Mere conclusory allegations by plaintiff are legally insufficient to controvert defendant's articulated reason for plaintiff's discharge as pretextual. Moreover, summary judgment is proper if the protected conduct is not a "significant factor," even though it may factor into the decision to discharge. Polk v. Yellow Freight Sys., Inc., 801 F.2d 190, 199 (6th Cir.1986) (under Michigan law plaintiff's protected activity must be a "significant factor" in causing plaintiff's discharge).
 
 
 26
 We find that plaintiff has failed to sustain her burden to demonstrate that a genuine issue of material fact exists regarding the retaliatory discharge claim. The only evidence offered by plaintiff consists of conclusory allegations and an insistence that the sequence of events supports an inference of retaliation. Defendant has an articulated legitimate reason for discharge and plaintiff has failed to introduce any concrete evidence that this reason is pretextual. Furthermore, plaintiff has not set forth specific facts which demonstrate that either her unfair employment practice claim or her worker's compensation claim was a "significant factor" in defendant's decision to discharge her. For these reasons, we affirm the district court's decision to grant summary judgment on the retaliatory discharge claim.
 
 IV.
 
 27
 The Michigan Handicappers' Civil Rights Act (HCRA) prohibits an employer from discharging or otherwise discriminating against an employee "because of a handicap that is unrelated to the individual's ability to perform the duties of a particular job or position." Mich.Comp.Laws Sec. 37.1201(1)(b). A handicap is defined to include a determinable physical characteristic or history of such characteristic that is "unrelated to the individual's ability to perform the duties of a particular job or position, or is unrelated to the individual's qualifications for employment or promotion." Mich.Comp.Laws Sec. 37.1103(b)(i). The Michigan Supreme Court in Carr v. General Motors Corp. held that the plain meaning of the statute dictates that an employee with a job-related handicap is not a handicapped person under the HCRA. 425 Mich. 313, 321-22 (1986).
 
 
 28
 Plaintiff has admitted that her alleged handicap, the injury to her knee, is related to her ability to perform the duties required by her employment. Because plaintiff's alleged handicap is job-related, she is not a handicapped person within the meaning of the HCRA. Because plaintiff fails to state a cause of action under the HCRA, we affirm the decision of the district court to dismiss this claim.
 
 
 29
 For the reasons stated above, we affirm the decision of the district court to grant defendant's motion for summary judgment regarding the claims for racially discriminatory and retaliatory discharge. We affirm the district court's order to dismiss the HCRA claim for failure to state a claim upon which relief can be granted pursuant to Fed.R.Civ.P. 12(b)(6).
 
 
 
 [1]
 Plaintiff was represented by counsel before the district court. On appeal her pro se brief contains medical records which were not before the district court and which, plaintiff argues, demonstrate that she was fired so that defendant would not have to pay her disability benefits under its employment contract. The breach of employment contract claim was dismissed by the district court by stipulation. This court is a reviewing court and will not consider evidence not before the district court